**Harry William THERIAULT, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 26173.**

United States Court of Appeals
Fifth Circuit.

April 18, 1969.

R. Neal Batson, Atlanta, Ga. (court-appointed), for appellant.

Floyd M. Buford, U. S. Atty., Walker P. Johnson, Jr., Asst. U. S. Atty., Macon, Ga., for appellee.

Before JOHN R. BROWN, Chief Judge, AINSWORTH, Circuit Judge, and FULTON, District Judge.

FULTON, District Judge.

This appellant was convicted upon a trial to a jury of the offense established by Title 18, U.S.C. § 751, escape by a prisoner from the custody of the United States. He has launched a heavy fusillade against this conviction, charging at least twelve separate specifications of error, most of which are totally without merit. None of them will be discussed in this opinion save appellant's contention that his escape was the result of an irresistible impulse, the product of a sick mind.

On June 3, 1967, Deputy United States Marshal Graham E. Same and his guard, John Anderson, arrived at a jail in El-

---

dorado, Arkansas and assumed custody of the appellant, Harry William Theriault, in order to transport him to Mobile, Alabama under a writ of habeas corpus ad prosequendum. As the officers proceeded toward Mobile by automobile with the appellant in their custody it was necessary for them to detour enroute twice to pick up and discharge other prisoners. Because of this circuitous route, it was necessary to quarter the appellant in a jail in Columbus, Mississippi on the night of June 3.

The next day, the guard was driving the automobile with the deputy sitting in the right front seat and the appellant and another prisoner by the name of Denney were confined in the back seat in handcuffs and leg irons. At a point some six or seven miles north of Bainbridge, Georgia in the midst of a heavy rainstorm, the guard pulled the automobile onto the left side of the highway and began to pass a line of automobiles ahead of him on the downgrade of a long hill. Just as he began this passing process, the appellant, who had picked the lock on his right handcuff, lunged over the front seat and snatched the deputy's revolver. In the ensuing scuffle the guard was frantically trying to stop the automobile and finally skidded to a stop on the slick pavement.

In the several moments which followed, the resourceful appellant completely reversed the whole situation. With the assistance of the deputy's revolver, he placed the deputy and the guard in the back seat under handcuffs and with leg irons and ordered the other prisoner to turn the automobile around and head back in the direction from whence they came. Shortly thereafter, upon the order of appellant, his fellow prisoner drove the automobile from the highway and down a dirt road into a deserted section of woods where appellant shackled the deputy and the guard to a tree, using the handcuffs, chains and leg irons. Then, having relieved the hapless officers of weapons, identification, credit cards, money, and other personal effects, the erstwhile prisoners took their departure in the deputy's automobile.

Not to be outdone by appellant's ingenuity, the officers managed to use a plastic stay from the guard's shirt collar to loose themselves from the tree. Still in chains, and completely drenched from the rain, they hobbled to the road where they tried to halt a passing automobile. The driver, probably believing the unlikely-looking officers to be escapees themselves, tried to run them down, and would have except at the last split second they dived into an adjacent ditch. Happily, they finally convinced the folk at a country trading post of their true identity. These people telephoned the local Sheriff, who rescued the officers and sent out a radio message which resulted in the recapture of the appellant and his fellow prisoner a short time later.

During the trial of the case, appellant vehemently argued that officers of the United States had wronged him by securing his presence before the Court illegally, by refusing him adequate opportunity to privately confer with his counsel, by refusing his request to subpoena witnesses, and by otherwise generally persecuting him. Although given court-appointed counsel, appellant, obviously highly intelligent and widely experienced in courtroom procedure and jargon, participated actively in his defense. At appellant's insistence, his counsel stood mute while he argued motions, interrogated witnesses, made objections, testified himself, and delivered his own closing argument, which concluded with a long poem of his own authorship. His behavior caused understandable aggravation to both his own and government counsel, as well as to the Court, all of which is made very clear by the record. In contrast to appellant's bizarre behavior, the record indicates that the persons charged with the responsibility of the orderly conduct of this trial made every possible effort to accommodate the appellant. Indeed, the District Judge was a veritable paragon of patience. He not only allowed the appellant to interrogate the sole govern-

ment witness exhaustively, but he even permitted appellant to place his own counsel and the United States Attorney on the witness stand. Virtually the only time that the able District Judge summarily refused to oblige the appellant occurred when the appellant asked the Judge himself to step down from the bench and to assume the witness chair. It must have required the forebearance and patience of Job of the Old Testament in order to preside over the trial in this case in the patient, careful manner demonstrated by this record.

Insanity was the main thrust of the appellant's defense. In his summation to the jury, which he delivered personally, he admitted the escape and argued only that his crime was the result of an irresistible impulse, which was the product of a sick mind. He asserted that the crux of the case was the state of his mind at the time he committed the offense.

Since sentence was imposed by the trial judge in this case, the Fifth Circuit Court of Appeals, en banc, has handed down an opinion which announces a new rule of law in this Circuit with respect to the proper charge to a jury on the defense of insanity in a criminal case, Blake v. United States, 5 Cir. 1969, 407 F.2d 908. In a very able opinion delivered by Judge Bell, this Court adopted a slightly modified variation of the standard set by the American Law Institute Model Penal Code, which standard is as follows:

> (1) A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to appreciate the criminality [wrongfulness] of his conduct or to conform his conduct to the requirements of law.

> (2) As used in this Article, the terms "mental disease or defect" do not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct.

Although this Court gave only prospective and not retroactive application to this standard, it did make it applicable to all cases then on appeal which involved the defense of insanity. The case *sub judice* falls in the latter category. Although the insanity charge given in this case was full and complete under the law of this Circuit at the time it was given, it does not meet the new *Blake* standard.

Despite its reluctance to subject the District Judge to a retrial of this case, this Court is constrained to reverse the conviction so that the jury may be properly instructed with this Circuit's new insanity charge, as specified by *Blake*. Although it is unnecessary to discuss the remaining points on appeal, we know that upon remand the able trial judge will allow counsel for the defendant wide latitude to glean and offer all admissible evidence on the defense of insanity under the *Blake* rule.

Reversed and remanded.