**Stiles R. DAVIS, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 25037.**

United States Court of Appeals Fifth Circuit.

July 2, 1969.

---

**1228**

J. Russell Hornsby, Orlando, Fla., for appellant.

E. J. Salcines, Asst. U. S. Atty., Edward F. Boardman, U. S. Atty., Tampa, Fla., for appellee.

Before GOLDBERG, GODBOLD, and SIMPSON, Circuit Judges.

GODBOLD, Circuit Judge:

Davis was convicted by a jury of possession with intent to defraud of counterfeit $10.00 Federal Reserve notes [1] and of fraudulent passing of counterfeit notes.[2] Government witnesses testified that pursuant to an agreement reached over the telephone by Davis and a government informant, Davis sold the counterfeit currency to an undercover treasury agent.

## 1. Insanity

Davis' principal defense was a claim of insanity at the time of commission of the offense. The defendant introduced extensive testimony of lay witnesses and medical experts suggesting that he suffered from depressive paranoia with aggressive reactions and rejection of responsibility, as evidenced by his ambitious financial schemes, violent outbursts of temper, and history of past medical treatment. The government introduced no expert medical testimony. To refute Davis' claim of insanity it relied on the cross-examination of the defense witnesses and the rebuttal testimony of lay witnesses concerning Davis' actions at the time of the commission of the crime.

The trial court gave instructions on the insanity defense comporting with its view of the then existing Fifth Circuit standards. Subsequent to the trial, and while the case was on appeal, this court adopted a new insanity definition in Blake v. United States, 5th Cir. 1969, 407 F.2d 908 [February 12, 1969] (en banc) and held that the Blake standards were to be applied to all cases then pending on appeal.[3] Since the trial court's instructions did not comport to *Blake*, Davis' conviction must be reversed. However, we cannot say that the record before us compels the entry of a judgment of acquittal. There was sufficient conflicting evidence concerning the relationship of Davis' mental defects to the commission of the crime to send the insanity issue to the jury. Under the circumstances of this case the government's failure to offer expert testimony did not warrant a directed verdict in favor of the defendant. See Bishop v. United States, 394 F.2d 500 (5th Cir. 1968); Brock v. United States, 387 F.2d 254 (5th Cir. 1967); Mims v.

---

1. 18 U.S.C.A. § 472 (1966).

2. 18 U.S.C.A. § 473 (1966).

3. See Hausmann v. United States, 5th Cir. 1969, 407 F.2d 1339 [February 22, 1969]; Hodges v. United States, 5th Cir. 1969, 409 F.2d 845 [April 28, 1969]; Theriault v. United States, 5th Cir. 1969, 409 F.2d 1313 [April 18, 1969]; United States v. Bryan, 5th Cir. 1969, 412 F.2d 841 [May 27, 1969]; United States v. Davis, 5th Cir. 1969, 411 F.2d 570 [May 26, 1969]; United States v. Hankins, 5th Cir. 1969, 410 F.2d 753 [May 2, 1969]; United States v. Lepiscopo, 5th Cir. 1969, 409 F.2d 843 [April 16, 1969]; United States v. Marbley, 5th Cir. 1969, 410 F.2d 294 [April 22, 1969].

United States, *supra*. Accordingly, we remand the case for a new trial.[4]

Davis has advanced several additional assignments of error. We deal with those likely to recur in a subsequent trial.

### 2. Pre-trial medical examination

Prior to trial the government moved under 18 U.S.C.A. § 4244 (1969) for a medical examination of Davis to determine his competency to stand trial. Davis did not object at that time to the nature or extent of the examination ordered by the court. However, he now contends that since the government was on notice that insanity at the time of the offense was to be one of the primary defenses at the trial, it was under an obligation to see that any pre-trial mental examination of him was broad enough to determine his mental responsibility at the time of the commission of the offense as well as his capacity to stand trial. We find this contention to be without merit.

■■■ Section 4244 provides for a psychiatric examination to ascertain whether "a person charged with an offense against the United States may be presently insane or otherwise so mentally incompetent as to be unable to understand the proceedings against him or properly to assist in his own defense." Courts have long recognized that "there is a vast difference between the mental state which permits an accused to be tried and that which permits him to be held responsible for a crime," and that the psychiatric examination necessary to determine competency to stand trial is

far less extensive than the examination necessary to determine mental competency at the time of the commission of the offense. Winn v. United States, 106 U.S.App.D.C. 133, 270 F.2d 326, 328 (1959); see also Birdsell v. United States, 346 F.2d 775, 780 (5th Cir. 1965); Johnson v. United States, 344 F.2d 401 (5th Cir. 1965). We cannot infer from the language of § 4244 requiring an examination to determine competency to stand trial that the statute requires the court or the prosecution automatically to provide the more extensive examination necessary to determine mental capacity at the time of the commission of the offense.[5]

### 3. Evidence of debt

■■■ Davis' insanity defense was based on the theory that a psychotic condition was triggered by heavy debts and business failures shortly before he began trafficking in counterfeit currency. In order to present evidentiary "raw material" relating to his mental condition, *see, e. g.*, United States v. Currens, 290 F.2d 751 (3d Cir. 1961), he sought to introduce evidence of the nature and extent of the debts. The court excluded evidence of certain of the debts, but it did so on the basis that the evidence proffered was not competent to prove the existence of the particular debts. This was not error. Background material should be freely admitted, but it must be competently proved.

### 4. Passing of counterfeit bills

Over objection by the defendant, the court permitted a government rebuttal witness to testify that nineteen days

---

4. For a history of Davis' activities while this case was pending on appeal, see United States v. Davis, 5th Cir. 1969, 411 F.2d 570 [May 26, 1969].

5. Where the defendant has properly raised as a defense insanity at the time of the commission of the offense, and is unable because of the lack of financial resources to procure adequate evidence on the insanity question, the government may be constitutionally required to afford him access to competent psychiatric testimony.

See Bush v. McCollum, 231 F.Supp. 560 (N.D.Tex.1964), aff'd 344 F.2d 672 (5th Cir. 1965); Goldstein & Fine, The Indigent Accused, the Psychiatrist, and the Insanity Defense, 110 U.Pa.L.Rev. 1061 (1962); cf. Winn v. United States, 106 U.S.App.D.C. 133, 270 F.2d 326 (1959). In the present case Davis was able to and did offer psychiatric testimony at the trial concerning his mental condition at the time of the commission of the offense.

prior to the date on which Davis passed counterfeit bills to the undercover agent, Davis paid for a meal at a restaurant with a counterfeit bill, and appeared to be sane at that time. The witness further testified that one week later Davis returned to ask for the counterfeit money back and that he appeared sane at that time as well.[6] We agree with the appellant that this testimony should not have been admitted in rebuttal.

The government recognizes that evidence of a defendant's prior criminal acts is not admissible to prove that the defendant was guilty of the crime for which he is charged because he is a man of criminal character. See, e. g., McCormick, Evidence § 157 (1954). It maintains, however, that the witness' testimony concerning Davis' actions and demeanor during a reasonable period before the offense is admissible to establish Davis' sanity at the time of the commission of the offense. Evidence of an accused's conduct may under proper circumstances be introduced to support a lay witness' testimony that the accused appeared sane during a period reasonably proximate to the commission of the offense. See, e. g., Breland v. United States, 372 F.2d 629 (5th Cir. 1967). But whatever probative value if any, the act of passing a counterfeit bill had on the question of Davis' sanity at the time of the commission of the offense for which he was charged was outweighed by a substantial danger of unfair prejudice and confusion of issues that could not adequately be cured by the court's cautionary instructions. See McCormick, *supra* § 152, at 319–21. Proof of Davis' demeanor, orientation, and appearance of sanity at the restaurant did not necessitate testimony that what he was engaged in was the illegal act of passing counterfeit money.

### 5. Recorded conversations

The telephone conversation between Davis and the government informant in which Davis agreed to sell the counterfeit notes was tape recorded with the permission of the informant from an extension to the telephone line the informant used in making the call. No warrant authorizing the recording was obtained.

Prior to trial to trial the defendant made timely motions for the discovery and inspection of the tapes under Fed. R.Crim.P. 16(a) and 16(b) [7] and for the suppression of the tapes as the product of an illegal search under the Federal Communications Act, 47 U.S.C. § 605, and the Fourth Amendment. Both motions were denied and the recording was introduced at the trial. We conclude that the court properly refused to suppress the tapes but erred in denying discovery.

In denying the discovery motion the trial court held that the recording was not a "statement" or "confession" of the accused so as to be discoverable under Rule 16(a) (1) [8] and that the tape was

---

6. Prior to admitting the evidence, the court gave the jury the following instruction:

"Just a minute. I want to instruct the jury that evidence—this testimony —in evidence from this witness is not admitted for the purpose of determining whether or not the Defendant committed either of the acts charged in the indictment, that is, in Counts One and Two. This evidence is admitted solely as it may relate to the mental competency of the Defendant at the time of the alleged offense."

7. An amended discovery motion was filed by Davis on September 30, 1966. Recent amendments to Rule 16 became effective on July 1, 1966.

8. *"Rule 16. Discovery and Inspection*
 *"(a) Defendant's Statements; Reports of Examinations and Tests; Defendant's Grand Jury Testimony.* Upon motion of a defendant the court may order the attorney for the government to permit the defendant to inspect and copy or photograph any relevant (1) written or recorded statements or confessions made by the defendant, or copies thereof, within the possession, custody or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the government * * *."

not a "tangible object" within the meaning of 16(b).[9]

■ Rule 16(a) (1) allows the discovery of any "statements" of the defendant "within the possession, custody or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the government." The Rule does not indicate that the defendant's discovery rights should be restricted because his words are spoken in the context of a secretly recorded conversation rather than during a formal confession. We agree with and adopt the conclusion of Judge Marovitz in United States v. Lubomski, 277 F.Supp. 713, 721 (N.D.Ill.1967) that secretly made tape recordings of the defendant's conversations are "statements" discoverable under 16(a) (1):

> If confessions are producible under Rule 16(a) (1), the same principles would seem to apply even more compellingly to recorded conversations, particularly because the defendant may not even be aware that his remarks were recorded. It seems logical that the considerations requiring production of statements knowingly and willingly made, should apply *a fortiori* to incriminating remarks furnished unwittingly to the government. That confessions [sic] of defendants obtained secretly through recording devices are encompassed within the intent of the rule seems apparent from

the Comments of the Advisory Committee, which state at one point: 'The defendant is not required to designate because he may not always be aware that his statements or confessions are being recorded.' * * *

See also United States v. Black, 282 F. Supp. 35 (D.D.C.1968); United States v. Iovinelli, 276 F.Supp. 629 (N.D.Ill. 1967);[10] cf. Cash v. Superior Court, 53 Cal.2d 72, 346 P.2d 407 (1959).

■ In its argument in this court the government asserts that the tape recording should be considered a statement of the informant who made the call so as to fall within the discovery provisions of the Jencks Act, 18 U.S.C.A. § 3500 (Supp.1969), and therefore will be exempt from discovery under Rule 16(b). The government errs in assuming the Jencks Act's application to the facts of this case. United States v. Sopher, 362 F.2d 523 (7th Cir. 1966), held that a secretly made tape recording of a defendant's conversations with an undercover agent did not fall within the Jencks Act. The court pointed out that the Jencks Act applies to recitals of past occurrences by a prospective prosecution witness, which differ materially from recordings of the events at issue in the trial.

■ As to the motion to suppress, Davis' contention that the recording and introduction into evidence of his conversation with the informant violated the Federal Communications Act, 47 U.S.C.

---

9. "Rule 16. Discovery and Inspection
 * * * * *
 "(b) *Other Books, Papers, Documents, Tangible Objects or Places.* Upon motion of a defendant the court may order the attorney for the government to permit the defendant to inspect and copy or photograph books, papers, documents, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody or control of the government, upon a showing of materiality to the preparation of his defense and that the request is reasonable. Except as provided in subdivision (a) (2), this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by government agents in connection with the investigation or prosecution of the case, or of statements made by government witnesses or prospective government witnesses (other than the defendant) to agents of the government except as provided in 18 U.S.C. § 3500."

10. In *Iovinelli* the court pointed out that the tapes would also be discoverable as tangible objects under Rule 16(b). 276 F. Supp. at 631–632.

§ 605,[11] is without merit. In Rathburn v. United States, 355 U.S. 107, 111, 78 S.Ct. 161, 164, 2 L.Ed.2d 134, 137–138 (1957), the Supreme Court said:

> Each party to a telephone conversation takes the risk that the other party may have an extension telephone and may allow another to overhear the conversation. When such takes place there has been no violation of any privacy of which the parties may complain. Consequently, one element of Section 605, *interception,* has not occurred. [Emphasis in original.]

In cases following *Rathburn* lower courts, including this court, have upheld under the Communications Act the introduction of recordings made from extension phones with the permission of one of the parties to the conversation. *See, e. g.,* Rogers v. United States, 369 F.2d 944 (10th Cir. 1966), cert. denied, Ferguson v. United States, 388 U.S. 922, 87 S.Ct. 2125, 18 L.Ed.2d 1371 (1967); Carnes v. United States, 295 F.2d 598 (5th Cir. 1961), cert. denied 369 U.S. 861, 82 S.Ct. 949, 8 L.Ed.2d 19 (1962).

The admissibility of the recordings under the Fourth Amendment follows from this court's decision in Koran v. United States, 5th Cir. 1969, 408 F.2d 1321 [January 27, 1969], petition for cert. filed, 37 U.S.L.Week 3459 (Sup.Ct. May 23, 1969). We there recognized that the Supreme Court's holding in Katz v. United States, 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576, 582 (1967) that "the Fourth Amendment protects people, not places" [12] shifts the focus of the Fourth Amendment from "protected areas" to the individual's expectations of privacy.[13] Whether the government's activity is considered a "search" depends upon whether the individual's reasonable expectations of privacy are disturbed.[14] Just as no "search" occurs in the observation of items left in "open view" [15] or an undercover agent's participation in conversations [16] or an informant's carrying of a recording device on his person,[17] no "search" occurred in the re-

---

11. 47 U.S.C. § 605: " * * * and no person not being authorized by the sender shall intercept any communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person; * * * ."

12. *But see* Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (Sup.Ct., March 10, 1969), where Mr. Justice White implies that the Fourth Amendment protects people *as well as* places.

13. "The Government's activities in electronically listening to and recording the petitioner's words violated the privacy upon which he justifiably relied while using the telephone booth and thus constituted a 'search and seizure' within the meaning of the Fourth Amendment." Katz v. United States, 389 U.S. 347, 353, 88 S.Ct. 507, 512, 19 L.Ed.2d 576, 583 (1967).

14. Thus, in *Katz* the surreptitious recording of a telephone conversation without the permission of the participants was held to be an unlawful search, while in Hoffa v. United States, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966) the testimony of an undercover agent concerning conversations spoken in his presence was held not to constitute a Fourth Amendment intrusion. The difference between the two cases is explained in Mr. Justice White's concurrence in Katz, 389 U.S. at 363, 88 S.Ct. at 517–518, 19 L.Ed.2d at 589:

> "When one man speaks to another he takes all the risks ordinarily inherent in so doing, including the risk that the man to whom he speaks will make public what he has heard. * * * It is but a logical and reasonable extension of this principle that a man take the risk that his hearer, free to memorize what he hears for later verbatim repetition, is instead recording it or transmitting it to another."

15. *See e. g.,* Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968); Miller v. United States, 356 F.2d 63, 68–69 (5th Cir.), cert. denied 384 U.S. 912, 86 S.Ct. 1357, 16 L.Ed.2d 365 (1966).

16. See Hoffa v. United States, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966).

17. See Lopez v. United States, 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462, 467 (1963).

cording of the defendant's telephone conversation with the informant under the circumstances of the present case. Davis' reasonable expectations of privacy were not violated, since he "knowingly took the risk that his conversants might expose his statements." Koran v. United States, *supra.* Since no search occurred, no warrant was necessary,[18] and the court properly denied the defendant's motion to suppress.

Reversed.

18. The Supreme Court has not resolved the question of the extent to which electronic eavesdropping is permitted when a warrant is necessary and has been obtained. See Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (Sup.Ct., March 10, 1969); Katz v. United States, 389 U.S. 347, 359, 88 S.Ct. 507, 19 L.Ed.2d 576, 587 (Douglas, J.) (concurring opinion).