**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**J. D. COLLIER, Defendant-Appellant.**

**No. 71–1901.**

United States Court of Appeals,
Fifth Circuit.

Jan. 13, 1972.

Rehearing Denied Feb. 4, 1972.

Joseph C. Jacobs, Tallahassee, Fla. (court appointed), Wilfred C. Varn, Tallahassee, Fla. (co-counsel court-appointed), Ervin, Pennington, Varn & Jacobs, Tallahassee, Fla., for defendant-appellant.

William H. Stafford, Jr., U. S. Atty., Clinton Ashmore, Asst. U. S. Atty., Pensacola, Fla., for plaintiff-appellee.

Before JOHN R. BROWN, Chief Judge, and INGRAHAM and RONEY, Circuit Judges.

INGRAHAM, Circuit Judge:

This appeal presents a further opportunity to consider the sufficiency of evidence of insanity as a defense to a criminal prosecution for murder on the high seas, 18 U.S.C.A. § 1111.

The appellant, J. D. Collier, signed on as a member of the crew of a fishing boat, the Isaac S. Boles, operating out of Panama City, Florida. On the morning

of October 14, 1966, the master of the vessel, Clayton Williams, was in the wheelhouse of the vessel. The master's nephew, Jimmy Hicks, a hand on board the Boles, testified that he saw Collier carrying a cup of coffee in one hand and a knife in the other, and that Collier either fell or lunged into the wheelhouse. Hicks testified that he heard his uncle holler: "Get him off me! He has got a knife." Before members of the crew could reach the wheelhouse and restrain Collier, his knife had penetrated Williams' chest causing his death. Collier was then seized by the crew of the Boles and held by them pending the arrival of a United States Coast Guard cutter which had been summoned. Collier was put aboard the cutter, and upon arrival at Panama City, Florida, he was turned over to the FBI.

At the time of the killing Collier had known Williams for one day previous to signing on to the Boles and for four days at sea. He was indicted for the murder of Williams on May 25, 1967.

On October 19, 1966, five days after the events on the Boles, he was examined by a diplomate of the American Board of Psychiatry, who evaluated that Collier was then operating under a paranoid delusional pattern and had been so at the time of the killing. In a pretrial order of November 6, 1970, the judge who was to eventually preside over his trial summarized Collier's subsequent institutional history as follows:

"On May 25, 1967, an indictment was filed against the defendant charging him with a violation of title 18, United States Code, Section 1111, the charge being premeditated murder on the high seas. On June 1, 1967, Court-appointed counsel for the defendant filed motion alleging that the defendant was not mentally competent to understand the proceedings against him or to assist his attorneys in his defense, and requested that the Court appoint two Psychiatrists to examine the defendant prior to the trial for the purpose of determining his mental competency to stand trial. The motion was granted by the Court on June 2, 1967. The defendant was examined by Joseph J. Regan, M.D., a Diplomate of the American Board of Psychiatry who rendered his report on August 29, 1967. It was the opinion of Dr. Regan that the patient was suffering from chronic paranoid schizophrenia. In his report Dr. Regan pointed out that the records of the Veterans Administration indicated the same diagnosis as early as the year 1964. It was the opinion of Dr. Regan that a large amount of drugs, mainly mellaral and stelazine should be taken by the patient continually to prevent him from promptly reverting to his psychotic behavior. It was further the opinion of Dr. Regan that the defendant should be institutionalized for a long period of psychiatric treatment.

"On August 4, 1967, the defendant was examined by Dr. Wallace A. Kennedy, a Clinical Psychologist, who, after having examined the defendant, diagnosed defendant's condition as paranoid schizophrenia.

"On October 9, 1967, this Court inquired into the mental competency of the defendant to stand trial and determined that the defendant was unable to stand trial and he was committed to the custody of the Attorney General under Title 18, United States Code, Section 4246.

"The report of the Medical Center for Federal Prisoners at Springfield, Missouri, dated December 27, 1967, indicates that the diagnosis on admission was schizophrenic reaction, paranoid type, chronic. It was stated in the report that though it was felt that this chronically mentally ill individual probably understood the nature of the charges against him, the nature of the courtroom procedures, and was able to assist counsel, nevertheless it was the opinion of the Staff Psychiatrist that the disease may be of such significance to interfere with his ability to make sound decisions and to enable him to examine critical material and it was likely that under the stress of adversary proceedings in the courtroom his condition would markedly deteriorate and he

would function at a floridly psychotic level.

"On December 5, 1969, the United States Attorney filed a motion for mental examination to determine whether the defendant was then competent to stand trial and in the motion requested that Philip B. Phillips, M.D., a noted Psychiatrist, be appointed to examine the defendant. An order was entered by this Court on December 5, 1969, for mental examination of the defendant by Dr. Phillips. Dr. Phillips rendered his opinion after having examined the defendant in which he stated that in his opinion the defendant was continuing to have recurrences of auditory hallucinations in that he continued to hear voices, which voices always threatened the defendant with bodily harm. Dr. Phillips stated that in his experience paranoid schizophrenics are troubled with feelings of persecution, delusions of being attacked and fear of suffering great bodily harm. It was the opinion of Dr. Phillips that if medication was not provided on a permanent basis the defendant would revert into a flagrant psychotic state and it was felt by Dr. Phillips that the defendant was a threat to society and that at the time of the offense he would not be capable of premeditation in the act of murder.

"This Court because of the suggestion in the report of Dr. Phillips that the defendant was mentally competent to understand the proceedings against him and to assist in his defense and that the defendant had sufficient ability to consult with his attorneys, entered an order on May 4, 1970, in which it was held that the defendant was competent to stand trial. Subsequent to the entry of this order the defendant made his second attempt to commit suicide and it was recommended by treating physicians that his medication be increased. In the order of May 4, 1970, this Court had ordered that the case be set for trial during the November, 1970 term of court and that the defendant should be examined by Dr. Phillips within thirty (30) days prior to trial to determine if at that time the defendant was mentally competent to stand trial.

"The defendant was examined by Dr. Phillips over a period of time and Dr. Phillips rendered his report on October 9, 1970, in which he stated that it was still his opinion that at the time of the incident in which the captain of the ship was allegedly slain by the defendant, that the defendant was in an acute psychotic state and acting on the basis of violent paranoid delusions.

"Prior to the last examination by Dr. Phillips, this Court held a hearing, at which hearing the testimony of Dr. Phillips was taken. It was obviously the opinion of Dr. Phillips that the defendant was chronically ill and that to restrain his psychotic impulses it was necessary that he be given medication constantly.

"After a full review of all of the medical reports and records on file, it is the opinion of the Court that notwithstanding the assertions on the part of the Staff Psychiatrist and Dr. Phillips that the defendant is competent to stand trial, the Court is of the opinion that the defendant is not legally competent to stand trial for the following reasons:

1. The examining physicians are in agreement that the defendant suffers from paranoid schizophrenia.

2. The examining physicians are agreed that the defendant's condition is permanent.

3. The examining physicians are agreed that the defendant is in need of constant medication.

4. There is no dispute by any of the medical authorities that the defendant hears voices and according to Dr. Phillips it is probable that he would hear voices during the trial.

5. At least two of the examining physicians are of the opinion that at a trial under the stress of the adversary proceedings in the courtroom, the defendant would in all probability markedly deteriorate and function at a floridly psychotic level.

"Under the above conditions the Court is of the opinion that the defendant is not able to assist in his defense and does not have sufficient ability to consult with his attorneys with a reasonable degree of rational understanding. The Court finds that he does not have a rational or factual understanding of the proceedings against him."

Collier was eventually found competent to stand trial and was tried by a jury on March 30, 1971. At that trial his court-appointed attorneys made a motion for judgment of acquittal based on the medical reports previously referred to in the November 6, 1970 order and which the district court had admitted into evidence. The district court, however, denied this motion, being of the considered opinion that this circuit's decisions in Mims v. United States, 375 F.2d 135 (5th Cir., 1967); Blake v. United States, 407 F.2d 908 (5th Cir., 1968); and United States v. Pitts, 428 F.2d 534 (5th Cir., 1970) required that the insanity issue be presented to the jury when the prosecution produced some evidence of sanity. The jury found the defendant guilty of first degree murder without capital punishment.

In a case similar to the one at bar Judge Hutcheson, in Brock v. United States, 387 F.2d 254 (5th Cir., 1967), observed:

"Appellate review of the sufficiency of the evidence is never an easy matter, and the difficulty is compounded when a jury in a criminal case has reached a verdict contrary to both medical testimony and visceral reaction."

■ As this circuit en banc held in *Blake, supra,* it takes only a slight quantum of evidence to raise an insanity defense. Collier met his burden by introducing the testimony and reports of seven psychiatrists and psychologists, all of whom were either government employees or court-appointed, whose statements were in substantial accord in concluding that Collier was a paranoid schizophrenic and was "legally insane at the time of the offense." It became, therefore, the duty of the prosecution to rebut this case for insanity.

In *Brock, supra,* this court observed that "the nature and quantum of rebuttal evidence sufficient to present a jury question is to some degree determined by the strength of the case for insanity." Here, the government's burden was indeed heavy, but its rebuttal consisted solely of the cross-examination of Collier's expert witnesses and the testimony of ten lay witnesses who had observed Collier after the fact.

In Mims v. United States, *supra,* the court gave certain techniques by which the prosecution could meet its burden on the insanity issue by discrediting the experts of the defendant. The court there stated that this type of evidence "* * * may be rebutted by showing the incorrectness or inadequacy of the factual assumptions on which the opinion is based, 'the reasoning by which he progresses from his material to his conclusion,' * * * inconsistencies or contradictions in his testimony as to material matters, material variations between the experts themselves, * * *. In some cases, the cross examination of the expert may be such as to justify the trier of facts in not being convinced by him. One or more of these factors may, depending on the particular facts of each case, make a jury issue as to the credibility and weight to be given to the expert testimony * * *." 375 F.2d at 143–144. Accord, United States v. Pitts, *supra.* The use of rebuttal by lay witnesses has also been approved. *Blake, supra.*

■ While it is true that the opinion of disinterested expert witnesses rendered on the issue of insanity is of no greater worth than the reasons upon which they are based, Nagell v. United States, 392 F.2d 934 (5th Cir., 1968), ultimately the "question of sufficiency of the evidence necessary to make an issue for the jury on the defense of insanity as well as whether the evidence establishes as a matter of law a reasonable

doubt as to a defendant's sanity is for the court." *Blake, supra,* 407 F.2d 908 at 911.

 Collier's case presented the prosecution with none of the factors for rebuttal enunciated by *Mims,* and since the prosecution relied solely on lay witnesses this case does not arise as a "battle of the experts" and is distinguishable in this regard from *Blake* and *Pitts, supra,* and United States v. O'Neal, 431 F.2d 695 (5th Cir., 1970). What rebuttal there is, therefore, comes from the testimony of persons who had seen Collier either immediately after the killing (when he had acted out his delusional pattern and was calmed) or while he was under medication. This testimony fails, as a matter of law, to rebut beyond a reasonable doubt the question of Collier's insanity.

As in *Nagell, supra,* we feel constrained to emphasize the particular and peculiar facts of this case which reinforce the unanimous psychiatric and psychological evaluation of Collier as a paranoid schizophrenic. Collier had known the deceased only a few days before the killing. He had never had cross words with him, nor was there any other motive apparent for the killing. Finally, the act itself does not appear the work of a "sane" individual. Cf. *Brock, supra.*

Our decision does no violence to the sound opinions we have rendered in *Mims, Blake, Pitts* and *O'Neal,* nor do we disparage the use in a proper case of lay witnesses to rebut expert testimony. We hold only that within the context of this case the government failed, in light of the overwhelming expert testimony to the contrary, to rebut defendant's evidence of insanity at the time of the offense. The district court, therefore, erred in denying Collier's motion for a judgment of acquittal at the close of the evidence.

The judgment of the district court is reversed and remanded with instructions to enter judgment of acquittal. The mandate, to issue instanter, will direct Collier's release within ten days unless civil commitment proceedings against him have been commenced.

## ON PETITION FOR REHEARING

### PER CURIAM:

It is ordered that the petition for rehearing filed in the above entitled and numbered cause be and the same is hereby denied.

It is further ordered that the alternative motion to recall and stay the Court's judgment issued as mandate for fifteen days from the date of this order to enable Appellee time to consider whether it will pursue certiorari proceedings in the United States Supreme Court is hereby denied.