**UNITED STATES of America, Plaintiff-Appellee,**

v.

**David Thurston ROBERTS, Defendant-Appellant.**

**No. 72–1832
Summary Calendar.***

United States Court of Appeals, Fifth Circuit.

Dec. 18, 1972.

J. V. Eskenazi, Fed. Public Defender, Charlene H. Sorrentino, Miami, Fla., for defendant-appellant.

Robert W. Rust, U. S. Atty., Jerome B. Ullman, Jr., Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before JOHN R. BROWN, Chief Judge, and GOLDBERG and MORGAN, Circuit Judges.

PER CURIAM:

The Defendant, David Thurston Roberts, was convicted by a jury of bank

---

5. We are neither advising nor encouraging appellant to take other or further action.

* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al., 5 Cir., 1970, 431 F.2d 409, Part I.

robbery, in violation of 18 U.S.C.A. § 2113. He urges three grounds for reversal: (i) the evidence was insufficient to sustain the jury's finding that Roberts was sane at the time of the robbery, (ii) the testimony of a treating psychiatrist, stating that Roberts confessed to him, was inadmissible as privileged communication between physician and patient, and (iii) it was error to admit evidence indicating Roberts' unwillingness to make a statement to investigating officers without the presence of an attorney. Finding these contentions to be without merit, we affirm the verdict and judgment of the District Court.

### The Facts

It was not seriously questioned at trial or on this appeal that Roberts walked into the Florida National Bank and Trust Company in Miami, handed a teller a note instructing him to hand over his fifty and one-hundred dollar bills, and, upon compliance by the bank employee, walked out again with the loot. Although Roberts was not armed, the bank teller believed him to be and therefore, made no effort to stop the bandit. He did, however, activate security cameras located in the bank which later revealed clear pictures of the Defendant leaving the bank. Roberts left Miami the next day, bound for his mother's home in New York, where he stayed for several days. Then, about eight days following the robbery, he went to the Utica (New York) State Hospital and asked to be admitted, stating that he could not control his drinking problem.

The evidence showed that Roberts was a highly educated man who had at one time operated a language school in Mexico City in the Republic of Mexico. Later, his business misfortunes caused him to leave that city and return to the United States. There was testimony indicating that Roberts had some history of mental depression and alcoholism. At the trial, the primary defense was Roberts' lack of mental capacity at the time of committing the crime.

### Sufficiency Of The Evidence

Appellant asks us to step into the shoes of the jury and find that the Government failed adequately to rebut the issue of insanity, as required by Blake v. United States, 5 Cir., 1969, 407 F.2d 908. However, Roberts failed to move for a judgment of acquittal at the close of the evidence, thus creating a dilemma remarkably similar to that which occurred in United States v. Patterson, 5 Cir., 1971, 438 F.2d 328. There we said:

> "To consider the merits of Patterson's insanity defense we would have to review the sufficiency of the evidence to support the jury's verdict. But review is precluded since Patterson failed to move for a judgment of acquittal at the close of all the evidence. *See* United States v. Pitts, 5 Cir., 1970, 428 F.2d 534, 535."

Even in the absence of this procedural bar, there is adequate evidence in the record to support the jury's conclusion that Defendant was mentally competent. United States v. Harper, 5 Cir., 1971, 450 F.2d 1032, 1040–1042; United States v. O'Neal, 5 Cir., 1970, 431 F.2d 695; United States v. Pitts, 5 Cir., 1970, 428 F.2d 534. There being no indication that this is a case of "plain error which would result in a clear miscarriage of justice," Patterson, *supra*, 438 F.2d at 329, we cannot say that the jury was erroneous in finding the Defendant sane at the time of the robbery and at trial.

### Privileged Communication

During the period that Defendant was confined at the Utica State Hospital, he gave a rather detailed account of the commission of the robbery to his psychiatrist, Dr. T. S. Chan. At the trial, Dr. Chan was permitted to testify to the mental condition of the patient. In so doing, he was allowed, over objection of Defendant, to discuss the "confession" which Roberts made at the hospital. While admitting that there is no common law doctrine of privileged communication between physician and patient, United States v. Mancuso, 5 Cir., 1971,

444 F.2d 691, 695, Appellant argues that the "spirit" of F.R.Crim.P. 26 "compels a reevaluation of the question of privilege and what the role of the psychiatrist as a witness in the Federal courts should be."

 We find the suggestion that we undertake *so* weighty a task particularly unappealing in this case. For here, the "confession" of the Defendant was not a factor in his conviction on the *physical* elements of the crime. The inculpatory testimony and evidence of the actual commission of the crime were overwhelming. Doctor Chan's testimony was used to rebut the defense of insanity, not to prove that Roberts was the bank robber or did the act. At the time the testimony was admitted, the trial court made a careful note and instruction to the jury to disregard the statements insofar as they related to the guilt or innocence of the Defendant as to the physical elements of the crime. The issue of Roberts' sanity could best be determined by a consideration of all the evidence relating to that status. *See* Mims v. United States, 5 Cir., 1967, 375 F.2d 135. Appellant has failed to show that the testimony of Dr. Chan was prejudicial to him.

### Unwillingness

 Appellant's final claim is that it was error to admit into evidence certain medical records of the Utica Hospital which contained a notation that Roberts had been interviewed by agents of the FBI and had refused to make a statement without an attorney being present to represent him. However, not only did counsel for Appellant Roberts fail to object to the admission of the records containing the objectionable material, he joined in seeking their admission. Furthermore, even though the material was admitted, no specific reference to the notation was made by the Court or any attorney or witness. The jury would have had to read through many pages of hospital records to uncover the prejudicial passage. There is no showing here that the jury did specifically find that passage and rely upon it to the substantial detriment of Defendant. If it was error at all to admit the records containing the statement, it clearly did not rise to the standards of harmful error in these circumstances.

Affirmed.