**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**John Weston FRATUS,
Defendant-Appellant.**

No. 75–3186.

United States Court of Appeals,
Fifth Circuit.

April 21, 1976.

Theodore Klein, Miami, Fla. (Court-appointed), for defendant-appellant.

Robert W. Rust, U. S. Atty., Don R. Boswell, Michael P. Sullivan, Asst. U. S. Attys., Miami, Fla., for plaintiff-appellee.

Before BROWN, Chief Judge, TUTTLE and GEE, Circuit Judges:

TUTTLE, Circuit Judge:

This is an appeal from a conviction under 18 U.S.C. § 2113(a) and (d), for bank robbery with a dangerous weapon. Following his indictment, appellant Fratus entered a plea of not guilty, and counsel was appointed for him. Upon the district court's determination that Fratus was competent to stand trial, the case proceeded to trial and a jury rejected his insanity defense, returning a verdict of guilty as to both counts. The district court sentenced appellant to twenty years' imprisonment, and this appeal followed. Appellant raises a number of issues concerning the validity of the proceedings in the district court, all of which bear in some way on his insanity defense. After careful consideration of appellant's claims and the evidence in the record, we affirm his conviction.

## I. THE COMPETENCY HEARING ISSUES

Appellant has challenged the district court's finding that he was competent to stand trial, as well as the propriety of the court's first two orders committing appellant to the custody of the Springfield Medical Center "until he becomes mentally competent." A brief summary of the pretrial competency proceedings is necessary at this point in order to understand and evaluate these issues.

On October 15, 1974, in response to a motion by defense counsel, the district court ordered appellant examined by a court-appointed psychiatrist, Dr. Paul Jarrett, pursuant to 18 U.S.C. § 4244.[1] Dr. Jarrett's report formed the basis of the district court's October 21, 1974 order adjudicating appellant incompetent to stand trial, committing him to the custody of officials at the federal medical center until he became competent, and ordering that institution to furnish the court with a statement of his progress toward competency. In February, both defense and government counsel presented motions to the district court requesting a second psychiatric examination of appellant, and these motions were granted. Appellant was examined by Dr. Albert Jaslow, and on the basis of this second examination another competency hearing was held by the court on February 26, 1975, resulting again in an adjudication of incompetency and appellant's recommitment to the medical center for further treatment.

Upon a defense motion on June 11, 1975, and following receipt of the psychiatric reports from Springfield, the district court ordered a further examination to determine appellant's mental condition. At a competency hearing on June 23, 1975, the district court heard expert testimony from Dr. David Tingle, a court-appointed psychiatrist, who stated that in his opinion appellant was incompetent to stand trial, and from Dr. William Clary, a psychiatric consultant to the Springfield Medical Center, who testified that appellant was competent and could cooperate with his counsel. At the close of the hearing, the district court ruled that appellant was competent to stand trial, and the case proceeded.

We examine first appellant's contention that the terms of the district

---

1. This section authorizes a district court, either *sua sponte* or upon the motion of one of the parties, to have the accused examined by a psychiatrist to determine whether he is able "to understand the proceedings against him or properly to assist in his own defense." If the psychiatric report to the court indicates a "state of present insanity or . . . mental incompetency in the accused," the court is directed to hold a hearing at which evidence on the matter is presented and the court makes a determination as to the accused's competency to stand trial.

court's first two orders committing him to Springfield until such time as he became competent directly violated the holding of this Court in *United States v. Wood,* 469 F.2d 676 (5th Cir. 1972), and of the Supreme Court in *Jackson v. Indiana,* 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972). Both of those cases, however, held only that in the absence of a finding that the prisoner would probably endanger the officers, property, or other interests of the United States, he may be held under 18 U.S.C. § 4246 "only for a reasonable period of time necessary to determine whether there is a substantial *chance* of his attaining competency to stand trial in the foreseeable future." *Wood, supra,* at 677, citing *Jackson, supra.* Here the district court coupled its commitment order with directions to the institution to furnish the court with periodic progress reports on appellant's condition, and used these reports to continue holding competency hearings in order to determine whether appellant was yet ready to stand trial. Under these circumstances, we find that such procedures afforded appellant adequate due process. *Wood, supra,* at 677.

Appellant's second argument with respect to the competency hearings conducted by the district court is that the court erred in finding him competent to stand trial. Appellant relies heavily on the fact that on two previous occasions, in October 1974 and February 1975, the court adjudicated him incompetent to stand trial, and that yet a third court-appointed psychiatrist, Dr. Tingle, found him incompetent in June 1975 at the time of the third and final competency hearing.

 As stated by this Court on numerous previous occasions, the test for mental competency to stand trial under 18 U.S.C. § 4244 is whether a defendant has sufficient present ability to consult with his attorney with a reasonable degree of rational understanding, and whether he has a rational as well as a factual understanding of the proceedings against him. *Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960); *United States v. Gray,* 421 F.2d 316 (5th Cir. 1970). A district court's

determination of competency in a particular case is a finding of fact which may not be set aside on review unless it is "clearly arbitrary or unwarranted." *United States v. Gray, supra,* 421 F.2d at 317. Thus the issue here is whether the district court's June 23, 1975 finding of competency was clearly erroneous.

 In light of the conflicting but strong testimony given by the two psychiatric experts at the June 23rd hearing, we cannot conclude that the district court erred in adjudicating appellant competent to stand trial at that time. It is true that Dr. Tingle, the court-appointed psychiatrist, testified that in his opinion appellant was not malingering and that his condition was substantially unimproved from nine months previously, when Dr. Jarrett had examined him and found him to be mentally incompetent. Nevertheless, Dr. William Clary, a psychiatric consultant to the Springfield Medical Center where appellant had been undergoing treatment after commitment, testified that, based on an evaluation of appellant's medical records and background, and an in-depth staff discussion of appellant's problems conducted while he was at Springfield, appellant was quite competent to stand trial. Dr. Clary also testified that appellant was a malingerer and prone to faking incompetency. Given the existence of this expert testimony, this Court does not find that the district court's determination that appellant was competent to stand trial was either arbitrary or unwarranted. *Gray, supra.* Furthermore, we reject appellant's contention that the district court committed reversible error in failing to question defense counsel as to his evaluation of his client's ability to cooperate with him in the course of the trial. While such inquiries may be helpful in close factual situations, *see, e. g., United States v. David,* 167 U.S.App.D.C. 117, 511 F.2d 355 (1975), failure to make them here can hardly be said to have constituted reversible error.

## II. SUBMISSION OF THE INSANITY ISSUE TO THE JURY

Appellant's second contention on appeal is that the district court committed

reversible error in allowing the insanity issue to go to the jury. Specifically, he argues that the government failed to produce any evidence to contest one of the necessary elements of an insanity defense as defined in this Circuit, and that hence the district court should have directed a verdict of acquittal at the close of appellant's case.

■ There is no doubt that appellant raised the issue of his sanity at the time of the offense; consequently, the government had the burden of proving beyond a reasonable doubt that he was sane at the time of the alleged crime. *Brock v. United States,* 387 F.2d 254, 257 (5th Cir. 1967). This Court, however, has never empirically defined the amount of evidence necessary to constitute "sufficiency" for purposes of submitting the issue of sanity to the jury, but instead has stated that each case must be decided on its own facts, and that the quantum and nature of proof the government must offer depends upon the quantum and nature of proof the defendant offers. *Nagell v. United States,* 392 F.2d 934, 937 (5th Cir. 1968).

■ The test for insanity in this Circuit is substantially the one proposed by the ALI in the Model Penal Code, and which has also been adopted by the Second, Fourth, and Seventh Circuits:[2]

"(1) A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law. (2) As used in this Article, the terms 'mental disease or defect' do not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct."

*Blake v. United States,* 407 F.2d 908, 916 (5th Cir. 1969) (En Banc). Thus, under *Blake,* once it has been established that the defendant is indeed suffering from a mental disease or defect, the remainder of the test is a disjunctive one—the defense must then prove either that the disease rendered the defendant incapable of appreciating the wrongfulness of his conduct, or that it rendered him incapable of conforming his conduct to the requirements of the law. The defense may choose to put only one of these latter "capacity" elements into issue, or it may elect to proceed on both of them, as was the case here.

At trial, appellant's attorney offered the testimony of two court-appointed psychiatrists, both of whom stated that appellant was suffering from paranoid schizophrenia. This diagnosis was not contested by the government's psychiatrist, Dr. Clary. The two psychiatrists offered by the defense also testified that appellant's mental illness rendered him incapable of appreciating the wrongfulness of his acts, and one of them, Dr. Jarrett, further stated that in his opinion appellant was incapable of conforming his conduct to the requirements of the law. In response to this testimony, the government psychiatrist, Dr. Clary, stated that in his opinion appellant "did know right from wrong" and "could have conformed his conduct to the law."

■ Appellant has contended that Dr. Clary's statement that appellant "did know right from wrong" did not constitute a refutation of the first element of the *Blake* test since Dr. Clary phrased his answer in terms of the old *McNaghten* standard[3] of "knowing" right from wrong, rather than "having the capacity" to comprehend the wrongfulness of one's actions. This argument, however, does not hold up under scrutiny since a person who, although suffering from a mental disease or defect such as paranoid schizophrenia, knows the difference between right and wrong is, *a fortiori,* capable of appreciating such a legal distinction. *Cf. United States v. Parks,* 460 F.2d 736, 743 (5th Cir. 1972).[4] Thus, con-

---

2. *United States v. Freeman,* 357 F.2d 606 (2d Cir. 1966); *United States v. Chandler,* 393 F.2d 920 (4th Cir. 1968); *United States v. Shapiro,* 383 F.2d 680 (7th Cir. 1967).

3. McNaghten's Rule, 1843, 10 Cl. and F. 200, 210, 8 Eng.Rep. 718, 722.

4. In *Parks,* the defense relied on the second element of the *Blake* test by seeking to prove that the defendant was incapable of conform-

trary to appellant's assertion, the government did present evidence to controvert that offered by the defense on both elements of the *Blake* test, and this Court finds that that evidence was of sufficient quality and weight to justify submitting the issue of appellant's sanity to the jury.

## III. EFFECTIVENESS OF APPELLANT'S APPOINTED COUNSEL

A further alleged point of error urged by appellant concerns the failure of his court-appointed counsel to move for the appointment of a psychiatrist pursuant to 18 U.S.C. § 3006A(e), which provides as follows:

> "Counsel for a defendant who is financially unable to obtain investigative, expert, or other services necessary to an adequate defense in his case may request them in an ex parte application."

Appellant argues that the failure of his attorney to utilize this statute to secure the services of a psychiatrist to aid in the preparation of his insanity defense denied him "counsel reasonably likely to render and rendering reasonably effective assistance," *United States v. Edwards,* 488 F.2d 1154 (5th Cir. 1974), and thus deprived him of the Sixth Amendment's guarantee of effective assistance of counsel. The government contends, however, that appellant's counsel made full and effective use of the psychiatric testimony already available to him as a result of the competency examinations previously conducted under 18 U.S.C. § 4244, and that his decision not to seek additional psychiatric services which might be available under § 3006A(e) was a professional judgment which should not be subjected to second-guessing or hindsight by this Court.

This Court has consistently recognized a difference between the purposes served by the appointment of a psychiatrist by a district court pursuant to 18 U.S.C. § 4244, for the purpose of ascertaining a defendant's competency to stand trial, and the appointment of a psychiatrist pursuant to § 3006A(e). An expert appointed pursuant to the latter section is intended to serve the interests of the defendant, as opposed to functioning as an objective, non-partisan expert when appointed pursuant to § 4244. *United States v. Edwards, supra,* 488 F.2d at 1160–61; *United States v. Theriault,* 440 F.2d 713 (5th Cir. 1971). Appellant urges that the holding in *Edwards* requires reversal here, but we are of the opinion that that case is sufficiently distinguishable so as not to dictate a finding of ineffective assistance in the situation here.

In *Edwards,* the defendant's court-appointed attorney successfully moved for the appointment of a psychiatrist pursuant to § 3006A(e). Due to a procedural mixup, however, the psychiatrist filed a report of his examination (which found Edwards "[probably] competent at the time of his offense") with the court, thus making it available to both parties rather than giving it to Edwards and his counsel alone. The district court then issued an order finding Edwards competent to stand trial "under Section 4244" and the case proceeded to trial without defense counsel ever raising the sanity issue again, or objecting to the court's treatment of the matter as one under Section 4244 prior to or during the trial on the merits. On appeal, this Court held that such inaction on the part of Edwards' attorney constituted ineffective assistance of counsel. The court reasoned that as a result of this failure to pursue the successful § 3006A(e) motion, Edwards received only a portion of the assistance that was the predicate for the initial request his attorney had ad-

---

ing his conduct to the requirements of the law. The government's psychiatrist, however, testified only that in his opinion the defendant "knew right from wrong," and on appeal this Court reversed the jury's verdict of guilty, holding that the government had completely failed to put on any evidence on the part of the *Blake* test that was at issue. The Court clearly indicated, however, that the psychiatrist's statement that the defendant "knew right from wrong" *would* have been sufficient to create a jury issue on the first prong of the *Blake* test, that of the capacity to comprehend the wrongfulness of one's conduct, had that been the issue at trial. 460 F.2d at 743–44.

dressed to the court. Moreover, the Court noted, the doubts about Edwards' mental competency that the court-appointed counsel had initially raised by an affidavit in support of his § 3006A(e) motion simply could not have been sufficiently resolved by the report of the pretrial competency examination so as to justify a complete abandonment of the § 3006A(e) motion. 488 F.2d at 1164.

In the case before us, we are faced with a situation in which appellant's court-appointed attorney had available to him, for purposes of preparing his client's defense, the testimony of two court-appointed psychiatrists who had examined appellant and had found him to be both incompetent to stand trial and legally insane under the standards enunciated by this Court in *United States v. Blake, supra.* While we remain cognizant of the distinction mentioned previously between the functions of a psychiatrist appointed under § 4244 and one appointed under § 3006A(e), we do not think *Edwards* establishes a *per se* rule that only a "§ 3006A(e) psychiatrist" is capable of providing the kind of defense-oriented testimony that will enable court-appointed counsel to provide an acceptable insanity defense for his client. Under the circumstances here, we hold that defense counsel's failure to move for the appointment of a psychiatrist pursuant to 18 U.S.C. § 3006A(e) did not deprive appellant of his Sixth Amendment right to effective assistance of counsel.

We have examined appellant's remaining allegations of error and find them to be without merit. The judgment of conviction is AFFIRMED.