UNITED STATES of America,
Plaintiff-Appellee,

v.

Andrew Anthony MANETTA,
Defendant-Appellant.

No. 76–2452.

United States Court of Appeals,
Fifth Circuit.

May 12, 1977.

Rehearing Denied July 18, 1977.

P. Bruce Kirwan, Federal Public Defender (court-appointed), Andrew H. Marshall, Federal Defender Program, Atlanta, Ga., for defendant-appellant.

John W. Stokes, U. S. Atty., Dorothy Y. Kirkley, Asst. U. S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before GOLDBERG and HILL, Circuit Judges, and KERR,* District Judge.

JAMES C. HILL, Circuit Judge:

On April 19–21, 1976, Andrew Anthony Manetta stood trial in the District Court for the Northern District of Georgia for a November 11, 1974, knife assault on Charles Norgaard while both were incarcerated in the federal penitentiary at Atlanta, Georgia. Manetta's trial defense was insanity, and he presented evidence, both expert and lay, that on November 11, 1974, he was legally insane—that is, because of a mental disease or defect, he lacked substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law. *See Blake v. United States,* 407 F.2d 908 (5th Cir. 1969) (en banc). As is its wont, the prosecution presented evidence tending to show that Manetta was sane at the time of the stabbing. The jury apparently believed the prosecution's witnesses on this issue and returned a verdict of guilty. Manetta challenges his conviction on three grounds: denial of his right to a speedy trial, insufficient evidence of sanity, and violation of Rule 16 of the Federal Rules of Criminal Procedure.

*Speedy Trial*

Manetta argues that delay in bringing charges against him violated his Sixth Amendment right to a speedy trial. The stabbing occurred on November 11, 1974, but no indictment issued until June 24, 1975. During the seven-month interval, defendant-appellant found himself subjected first to segregation from other prisoners and later to confinement in the psychiatric ward of the prison.

While in segregation, Manetta received a visit from an American Civil Liberties Union (ACLU) attorney who, as a result of the visit, filed a mandamus action seeking to compel prison authorities to provide psychiatric care for Manetta and to allow a psychiatric examination of him by a Dr. Corbett Turner. The prison authorities refused both requests but later admitted Manetta to care in the prison psychiatric ward. At this point, the mandamus suit was voluntarily dismissed.

On December 11, 1975, at the request of defense counsel and as part of trial preparations, Dr. Turner examined the defendant, after which defense counsel filed notice of intent to raise an insanity defense. Unfortunately, claims the defendant, Dr. Turner's diagnosis of Manetta's mental condition on November 11, 1974, suffered from the thirteen month lag between the stabbing and the examination. Such is the prejudice claimed by defendant to bolster his speedy trial claim. If the criminal proceedings in this matter had begun earlier, he claims, the uncertainties in Dr. Turner's diagnosis would have evaporated, since the examination would have been more proximate to the time of the assault. Defendant raised this claim on a pre-trial motion to dismiss, and the Court held a hearing at which Dr. Turner testified as to the increased uncertainty of his diagnosis due to the delay. The Court denied the motion.

As an initial legal point, defendant-appellant argues that his segregation constituted an "accusal" or an "arrest" for Sixth Amendment purposes, thereby trig-

---

* Senior District Judge for the District of Wyoming, sitting by designation.

gering the *ad hoc* balancing test of *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), in evaluating the delay from "accusal" to trial.[1] We have recently held segregation not to constitute such an "arrest" or "accusal." *United States v. Duke,* 527 F.2d 386 (5th Cir. 1976). *Duke* controls this case since there is no appreciable difference between the segregation involved there and the segregation involved here.

Thus, since Manetta was already in federal custody, the event triggering Sixth Amendment scrutiny was the indictment issued on June 24, 1975. The appropriate standard for measuring this delay prior to "accusal" arises from *United States v. Marion,* 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971).[2] Under this test, the defendant demonstrates a violation of his right to a speedy trial only if he can show that the delay ". . . caused substantial prejudice to [his] right to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused." 404 U.S. at 324, 92 S.Ct. at 465. *See United States v. Duke, supra; United States v. McGough,* 510 F.2d 598 (5th Cir. 1975); *but see United States v. Avalos,* 541 F.2d 1100, 1107–08 n. 9 (5th Cir. 1976) (suggesting that issue may be open whether either substantial prejudice or tactical delay alone might be sufficient; indicating that earlier statements requiring both could be read as dicta). The prejudice shown must be actual, not speculative or hypothetical. *Duke, supra; McGough, supra.*

■ The District Court properly denied the motion to dismiss on speedy trial grounds, since defendant-appellant failed to show either actual substantial prejudice or any indication of intentional tactical delay by the prosecution. The sole source of prejudice claimed by defendant lies in the alleged increased difficulty encountered by

Dr. Turner in making a definite diagnosis of defendant's mental state as of November 11, 1974. Prejudice based on this assertion is, at best, speculative. In addition, defendant makes no showing at all that the prosecution intentionally delayed proceedings in this matter for tactical advantage. The defendant-appellant's Sixth Amendment claim must therefore fail.

### Sufficiency of the Evidence

■ Defendant-appellant relies most heavily on his assertion that the District Court should have granted a motion for verdict of acquittal, based on the state of the evidence on the insanity issue. He claims that the prosecution did not adduce enough evidence to establish beyond reasonable doubt that Manetta was sane on November 11, 1974.

At trial, the prosecution set out its proof of the assault and Manetta's involvement therein. Manetta, in effect, admitted the facts but claimed that prior to the stabbing he heard voices, which told him that Norgaard was going to kill him, and claimed to be unable to remember anything on November 11 after he said "Good morning" to Norgaard and before he was led into segregation. Documents asserted that Manetta was diagnosed in 1962 and again in 1967, and in 1973, as a paranoid schizophrenic with psychosis. A few weeks before the stabbing, testified the defendant, he had requested medication and later removal to a solitary cell, on the basis that he had begun suffering from hallucinations. Prison officials denied both requests. The ACLU attorney testified to the defendant's agitated and incoherent state during her visit in January 1975. A physician employed by the prison determined during Manetta's time in the psychiatric ward that the defendant suffered from paranoid schizophre-

---

1. *Barker* analysis covers both delay between arrest and indictment and delay between indictment and trial. *See United States v. Palmer,* 537 F.2d 1287 (5th Cir. 1976). The events controlling the application of *Barker,* thus, are the accusal and the trial.

2. The Supreme Court in *Dillingham v. United States,* 423 U.S. 64, 96 S.Ct. 303, 46 L.Ed.2d 205 (1975) held that *Barker v. Wingo ad hoc* analysis governs all pretrial, post-accusal delay, whether the accusal be by arrest or indictment, while *Marion* governs delay between the alleged offense and the accusal.

nia. Finally, Dr. Turner testified that in his opinion, Manetta suffered from paranoid schizophrenia, sometimes subject to remission, and possessed a sociopathic personality continuously from 1962. Dr. Turner expressed his judgment that on November 11, 1974, the defendant lacked a substantial capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law. This opinion found its basis in what defendant told Dr. Turner during the December 11, 1975, psychiatric examination. The doctor did, however, admit on cross examination that at times the defendant was lucid, rational, and coherent, and that he could at times appreciate the wrongfulness of his conduct and conform to the requirements of law.

The government, for its part, attacked the defense of insanity through testimony concerning the defendant's behavior on and immediately before and immediately after November 11. All of the testimony indicated that defendant was behaving normally without sign of mental affliction.

Mr. George Wells, the caseworker assigned to the defendant, testified that he saw the defendant regularly during the period immediately preceding and following the assault. He testified that the defendant "always seemed lucid," and had never told him about any delusions, hallucinations, or suspicions. Mr. Restivo, a prison official, testified as to a statement the defendant made to him immediately following the stabbing. This statement, discussed *infra*, indicated the mental clarity of the defendant at the time of the assault.

The prosecution also presented the expert testimony of Dr. Alderete and Dr. Baccus, psychiatrists, who both testified that based upon their observations, the defendant was legally sane under the *Blake* standard at the time of the incident.

Clearly, on this state of the record, there was enough evidence to reach the jury on the issue of insanity. *United States v. Phillips,* 519 F.2d 48 (5th Cir. 1975); *United States v. Collins,* 491 F.2d 1050 (5th Cir. 1974); *Blake v. United States, supra.* Much of the dispute involved questions of

credibility, questions most appropriately suited for the jury. *United States v. Fortune,* 513 F.2d 883 (5th Cir. 1975). And, considered in the light most favorable to the government, *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), we conclude that the evidence may be viewed as establishing beyond a reasonable doubt that the defendant was legally sane at the time of the assault. *See United States v. Fortune, supra.* We therefore hold that the government met its burden of proof, and deny appellant's objection.

### *The Statement is that no Statement Will be Made*

#### *Rule 16*

■ We grapple now with a most difficult question arising from a unique fact setting, ably and candidly presented to us in briefs and oral argument by appellate counsel who knew whereof they spoke because they were the trial counsel in the district court.

The sanity issue was earnestly presented by both sides on sharply conflicting evidence. If there be cases in which such an issue is raised as sham based upon desperation, this was not such a case. In order to carry its burden, the government introduced lay testimony concerning behavior and expert testimony, all reviewed above. As further proof that defendant was a rational and calculating individual, the government presented the testimony of the prison employee who led defendant away from the scene of the stabbing and into segregation.

> Mr. Restivo: I had asked him [Manetta] if he had wished to talk about the incident that had had [sic] just occurred [the stabbing] and he replied "no" that he would talk to his lawyer.

Defendant had invoked Rule 16 of the Federal Rules of Criminal Procedure which mandates government disclosure to the defense of

> the substance of any oral statement which the government intends to offer in evidence at the trial made by the defend-

ant whether before or after arrest ·in response to interrogation by any person then known to the defendant to be a government agent.

Counsel for the government was on the horns of a dilemma. She was required to disclose any statement made by Manetta. Manetta had refused to make a statement, so it could be said that the government had none. Yet, the *statement he made* in declining *to make a statement was useful to* the government in proving his sanity.[3]

The interrogation was brief.

I asked him if he had wished to talk about the incident that had had [sic] just occurred.

The reply was as brief, but it was clearly in response to the interrogation.

He replied "no" that he would talk to his lawyer.

From the foregoing, it is seen that the statement that I have no statement to make but wish to see my lawyer, itself, is a statement within the terms of Rule 16.[4] The statement was clearly made in response to interrogation by a government agent, known as such by the defendant. From counsel's candid admission, it is clear that the statement was intended to be used as evidence bearing on the critical issue in the case, the mental state of the defendant at the time of the commission of the offense.

The transcript reveals that the prosecution in fact attached great importance to the statement and the usefulness of it in proving that the defendant was a sane person at the time of the offense.

Counsel stressed the importance of the statement in closing argument as follows:

Now, again, one of the more critical factors in this case is Restivo's testimony that Mr. Manetta wanted to talk to a lawyer. I don't think that needs much more explanation. He had to appreciate at that moment the wrongfulness of his conduct. He didn't want to explain it. He didn't want to justify it. He didn't want to say the voices told me to do it. He just wanted to see his lawyer, ladies and gentlemen.

The failure to disclose the statement as required by Rule 16 in our opinion constitutes error. Mindful that the most critical issue in this close case was the sharply contested one of the defendant's sanity, or lack thereof, we conclude that the error was of a prejudicial and not a harmless nature. *See Kotteakos v. United States,* 328 U.S. 750, 764–65, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946); *United States v. Jennings,* 527 F.2d 862, 868 (5th Cir. 1976); *United States v. Roland,* 449 F.2d 1281, 1282 (5th Cir. 1971); *United States v. Lipscomb,* 435 F.2d 795, 803 (5th Cir. 1970), *cert. denied,* 401 U.S. 980, 91 S.Ct. 1213, 28 L.Ed.2d 331.

Finally, we feel the need to address a contention urged upon us. It has been suggested that the statement was one merely offered in rebuttal to the defendant's plea of insanity and that Rule 16 is inapplicable to statements offered as rebuttal. We need not determine the application of Rule 16 to statements offered in rebuttal since we are convinced that the statement was not so used. The argument otherwise miscon-

---

**3.** Under the pressure of mounting caseloads, it might be supposed that, in a situation of this sort, an Assistant United States Attorney, asked for defendant's statements, would consult the file and honestly respond that none had been given. At oral argument before us, counsel for the government did not proffer such a convenient excuse, stating in commendable candor that she recognized the value of the exchange between the prison guard and Manetta but concluded that it did not amount to a statement as contemplated by Rule 16.

**4.** As outlined, we have found a statement made by appellant within the boundaries of his refus-

al to make a statement! Thus it is conceivable that the use of the statement which he did make results in impermissible comment on his right to remain silent! No such contention was made in the District Court; none was raised here. We do not have counsel by briefs or oral argument from the fine attorneys who presented the case to us. We shall not decide it, but commend it to the District Judge should it be raised on re-trial. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *Baker v. United States,* 357 F.2d 11 (5th Cir. 1966), and *Kelley v. United States,* 99 U.S.App. D.C. 13, 236 F.2d 746 (1956).

ceives the nature of 'the insanity defense and the burden of proof relating thereto.

■ The burden of proof in a criminal case always remains with the prosecution and is never shifted, on any issue, to the defendant. *Davis v. United States,* 160 U.S. 469, 16 S.Ct. 353, 40 L.Ed. 499 (1895); *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). *Blake v. United States,* 407 F.2d 908 (5th Cir. 1969) (*en banc*).[5] Thus, in practically all criminal prosecutions, both the burden of proof and the burden of going forward with the evidence is upon the government at the opening of the trial as to all essential elements of the crime. One possible issue in a criminal case is given special treatment. It is an essential element of any crime that at the time of the commission of the crime, the defendant be sane. *United States v. Milne,* 487 F.2d 1232 (5th Cir. 1973); *Mims v. United States,* 375 F.2d 135 (5th Cir. 1967). Although that be an essential element, it is not put in issue in the vast majority of criminal cases. *See Davis, supra.* Thus, it has been decided that, in order to present a complete case, the government need not introduce evidence showing the sanity of a defendant until and unless the defendant shall have made an issue of that subject. *United States v. Phillips, supra; United States v. Fortune, supra.*

■ When, however, such an issue has been made, it becomes a part of the government's case in chief (and, certainly, remains its burden) to prove sanity beyond a reasonable doubt. *Brock v. United States,* 387 F.2d 254 (5th Cir. 1967). The result of all of this is that in the "usual" case, the matter is adjudicated without there ever having been any positive evidence on one essential element of the commission of the crime, sanity. Further, even in cases in which sanity or insanity becomes an issue, the presentation of the government's case is usually terminated without there having been any affirmative evidence on that subject.

■ When, during the presentation of the evidence on behalf of the defendant, such an issue is positively raised, then it becomes the duty of the government to complete the presentation of its case in chief and, at that time, the government moves forward with the presentation of affirmative evidence indicating sanity. *United States v. Phillips, supra.* The confusion results from the order in which the evidence is taken. Going back to cases in which sanity is not made an issue—the "usual" cases—the order of presentation of evidence is that the government presents evidence alleged to prove the guilt of defendant; the defendant moves forward, if the defendant elects to do so, with exculpatory evidence; then the government, if it wishes to do so, presents "rebuttal" evidence, seeking to rebut that which has been offered by the defendant. Because "rebuttal" evidence usually comprises the total of all evidence presented after the defendant has rested, that phase of the trial has become known as the "rebuttal" phase. As has been seen, in a case where the issue of sanity or insanity is presented, the order is much the same. First the government presents its evidence; the defendant presents the defendant's opposing evidence; and then the government takes the stage again for the presentation of the evidence. However, where during the presentation of

5. In *Davis, supra,* the Court said:

Strictly speaking, the burden of proof, as those words are understood in criminal law, is never upon the accused to establish his innocence or to disprove the facts necessary to establish the crime for which he is indicted. It is on the prosecution from the beginning to the end of the trial and applies to every element necessary to constitute the crime. Giving to the prosecution, where the defence is insanity, the benefit in the way of proof of the presumption in favor of sanity, the vital question, from the time a plea of not guilty is entered until the return of the verdict, is whether, upon all the evidence, by whatever side adduced, guilt is established beyond reasonable doubt. If the whole evidence, including that supplied by the presumption of sanity, does not exclude beyond reasonable doubt the hypothesis of insanity, of which some proof is adduced, the accused is entitled to an acquittal of the specific offence charged.

160 U.S. at pp. 487–88, 16 S.Ct. at pp. 358.

the defendant's case sanity has been put into issue, when the government resumes the active role of presenting evidence; it is not confined to the presentation of "rebuttal" evidence; it has resumed the burden of going forward with the presentation of its case in chief, only in these cases it is presenting evidence as to an essential element of the crime, sanity, which it was privileged to skip when it first proceeded. See, Wright, Federal Practice and Procedure, Criminal § 403.

Therefore, in this case even though the presentation of the government's evidence on the issue of sanity followed that of the defendant, it was not necessarily presenting "rebuttal" testimony but it was supporting its case in chief. The value seen by the prosecution and by this Court of the statement made by the defendant on the issue of sanity was to the government's case in chief. It was evidence of the existence of reason in the mind of the defendant at a point in time very close to the commission of the offense. We do not find that it was rebuttal; it was principal evidence on the part of the government and required by Rule 16 to be disclosed. Having so held, we are not faced with and do not decide the applicability of Rule 16 to statements truly utilized as rebuttal evidence.

Thus, the contention of the government must be rejected, and in light of our determination that in the circumstances of this case the error was not harmless, the judgment of the District Court is

REVERSED and REMANDED.

KERR, District Judge, concurring in part and dissenting in part.

I concur in that portion of the opinion which holds that Manetta's Sixth Amendment right to a speedy trial was not violated. Judge HILL in his opinion amply justified the delay.

With all deference to my colleagues, I am unable to persuade myself that Rule 16 contains sufficient elasticity to cover a refusal to make a statement.

Rule 16 in substance provides: ". . . the government shall permit the defendant to inspect and copy or photograph: any relevant written or recorded statements made by the defendant, . . . the substance of any oral statement which the government intends to offer into evidence at the trial made by the defendant . . . before or after arrest in response to interrogation by any person then known to the defendant to be a government agent; . . . ."

In this case the prison guard asked the defendant if he wished to talk about the incident that had occurred, and the defendant's response was "No," that he would talk to his lawyer. In my judgment, the response has no resemblance to a statement contemplated by Rule 16. The government did not use this response in its case in chief. Only after the defendant interposed a plea of insanity did the government offer this evidence to show that Manetta was sufficiently competent to want to talk to his lawyer before making any statement. The comment was introduced as an observation by a layman as to the defendant's mental condition at the time of the offense. In this instance the words spoken constituted verbal conduct rather than a statement within the purview of Rule 16.

It is my opinion that the interpretation of Rule 16 adopted by my colleagues is too far reaching and can lead to disastrous results, nor will the interests of clarity or future interpretation of the rule be served by the majority holding. For these reasons I respectfully dissent.