UNITED STATES of America, Plaintiff-Appellee,

v.

Roy Dean IVERSON, Defendant-Appellant.

No. 78–5118

Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

Jan. 22, 1979.

* Rule 18, 5 Cir.; *see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.*, 5 Cir., 1970, 431 F.2d 409, Part I.

Francis P. Maher, Laredo, Tex., for defendant-appellant.

Jamie C. Boyd, U. S. Atty., LeRoy M. Jahn, John E. Murphy, Asst. U. S. Attys., San Antonio, Tex., for plaintiff-appellee.

Before GOLDBERG, AINSWORTH and HILL, Circuit Judges.

JAMES C. HILL, Circuit Judge:

Roy Dean Iverson was charged with assault with intent to commit rape. 18 U.S. C.A. § 113(a). He was tried and convicted by a jury and sentenced to twenty years imprisonment under the provisions of 18 U.S.C.A. § 4205(a). He now appeals his conviction which we affirm. Iverson did in fact commit the assault. His defense strategems at trial and his assignments of error on appeal revolve around the insanity defense; he has maintained that he was insane at the time of the assault.

Initially, he argues that the facts surrounding the assault were sufficiently bizarre for this Court to hold that the District

Court should have granted a motion for judgment of acquittal and to reverse his conviction. We cannot agree.

The evidence disclosed several indications of aberrant behavior. Iverson was a mental patient and a diagnosed paranoid schizophrenic. He left the Lackland Air Force Base Hospital against medical advice only a few hours before the assault. He assaulted the victim in broad daylight in view of passers-by. He was wearing a heavy coat on a very warm day. He acted strangely during and after the assault.

█ It is clear that the issue of Iverson's sanity at the time of the offense was placed in question by the evidence of the events surrounding the assault. Consequently, the Government had the burden of establishing beyond a reasonable doubt that Iverson was sane at the time of the attempted rape. *E. g., Brock v. United States*, 387 F.2d 254, 257 (5th Cir. 1967) and cases cited. At trial, the uncontroverted expert testimony by the psychiatrist who had examined Iverson both before and after the incident established that Iverson, although a paranoid schizophrenic, was oriented as to time and place, had normal comprehension, had a reasonable attention span, and spoke in a normal coherent manner. According to the psychiatrist there was no question as to Iverson's mental competency, and he was not considered dangerous either to himself or to any member of the community. The psychiatrist also testified that, on the date of the assault, Iverson could determine right from wrong and had the ability to conform his actions to the requirements of the law.

█ Clearly, on the state of this record, there was sufficient evidence to reach the jury on the issue of insanity, and the District Court was correct in submitting the issue to the jury for its determination. *E. g., United States v. Phillips*, 519 F.2d 48 (5th Cir. 1975), *cert. denied*, 423 U.S. 1059, 96 S.Ct. 796, 46 L.Ed.2d 650 (1976); *Blake v. United States*, 407 F.2d 908 (5th Cir. 1969) (*en banc*). In light of the expert testimony, and in the total absence of any significant evidence produced to contradict it, a reasonable-minded jury would not necessar-

ily have entertained a reasonable doubt on Iverson's sanity, and the denial of the motion for judgment of acquittal was proper. *E. g., United States v. Evans*, 572 F.2d 455, 476 (5th Cir. 1978); *United States v. Pinner*, 561 F.2d 1203 (5th Cir. 1977). Moreover, when the evidence is considered in the light most favorable to the Government with all inferences and credibility choices made to support the jury's verdict, *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *United States v. Seastrunk*, 580 F.2d 800 (5th Cir. 1978), this court can only conclude that the evidence may be viewed as establishing beyond a reasonable doubt that Iverson was legally sane at the time of the assault. *E. g., United States v. Kossa*, 562 F.2d 959, 960 (5th Cir. 1977); *United States v. Manetta*, 551 F.2d 1352, 1355 (5th Cir. 1977).

█ Iverson also takes issue with the District Court's instructions to the jury, regarding insanity:

The test for insanity is as follows:

A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law. The terms 'mental disease or defect' do not include an abnormality manifested only by repeated criminal or otherwise anti-social conduct.

In other words, you should find the defendant not guilty if you find that at the time of the alleged assault he was, by reason of mental disease or illness, either (I) unable to appreciate the wrongfulness of his actions or (II) unable to conform his conduct to the requirements of the law.

This is precisely the charge on insanity adopted as the standard by this Court, *en banc*, in *Blake v. United States*, 407 F.2d at 916, and the standard which this Court has consistently approved since its adoption. *E. g., United States v. Pilkington*, 583 F.2d 746 (5th Cir. 1978); *United States v. Manetta*, 551 F.2d at 1355; *United States v. Cohen*,

530 F.2d 43, 46 (5th Cir.), *cert. denied*, 429 U.S. 855, 97 S.Ct. 149, 50 L.Ed.2d 130 (1976); *United States v. Fratus*, 530 F.2d 644, 648 (5th Cir.), *cert. denied*, 429 U.S. 846, 97 S.Ct. 130, 50 L.Ed.2d 118 (1976).

Iverson's complaint regarding the charge is that he never placed his capability to appreciate the wrongfulness of his conduct in issue and thus that the District Court erred in giving the complete instruction as required by this Court. He further contends that the District Court should have simply limited the instruction to the question whether Iverson could conform his conduct to the requirements of the law. He seems to insist that the two-prong test of *Blake* restricted his defense of insanity when it obviously expanded it; for, if the jury had found that Iverson was capable of conforming his conduct to the requirements of the law but was incapable of appreciating the wrongfulness of his conduct, it would have been required to acquit him under instruction.

■ There is no question that the issue of a defendant's sanity at the time he committed the offense is an element which the Government has to prove beyond a reasonable doubt. *Blake v. United States*, 407 F.2d at 912. In *United States v. Manetta*, 551 F.2d at 1357–58, this Court explained the unique procedure following in insanity cases:

> The confusion results from the order in which the evidence is taken. Going back to cases in which sanity is not made an issue—the 'usual' cases—the order of presentation of evidence is that the government presents evidence alleged to prove the guilt of the defendant; the defendant moves forward, if the defendant elects to do so, with exculpatory evidence then the government, if it wishes to do so, presents 'rebuttal' evidence, seeking to rebut that which has been offered by the defendant. Because 'rebuttal' evidence usually comprises the total of all evidence presented after the defendant has rested, that phase of the trial has become known as the 'rebuttal' phase. As has been seen, in a case where the issue of sanity or insanity is presented, the order is much the same. First the government presents its evidence; the defendant presents the defendant's opposing evidence; and then the government takes the stage again for the presentation of the evidence. However, where during the presentation of the defendant's case sanity has been put into issue, when the government resumes the active role of presenting evidence; it is not confined to the presentation of 'rebuttal' evidence; it has resumed the burden of going forward with the presentation of its case in chief, only in these cases it is presenting evidence as to an essential element of the crime, sanity, which it was privileged to skip when it first proceeded.

Here the sequence was somewhat different from the "usual" insanity case. The issue of Iverson's sanity was addressed initially in the Government's proof, either in anticipation of an insanity defense or as an inevitable part of the presentation of the background of the assault. In effect, the presumption of sanity was dispelled by the Government's own account of the crime and defense cross-examination of the Government's witnesses. As a result, the Government properly attempted to carry its burden of proving Iverson's sanity beyond a reasonable doubt. The presumption of sanity vanishes once slight evidence of a criminal defendant's lack of mental capacity is introduced and the Government must then prove the defendant's sanity beyond a reasonable doubt. *E. g., United States v. Phillips*, 519 F.2d 48, 49 (5th Cir. 1975) and cases cited.

Counsel objected during the charge conference to the use of both prongs of the *Blake* standard:

> A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law.

*Blake v. United States*, 407 F.2d at 916.

■ In essence, Iverson urges that the District Court erred in submitting to the

jury the complete *Blake* definition of sanity. He first observes that the psychiatrist testified that Iverson was able to distinguish between right and wrong. This right-from-wrong test, Iverson argues, was abrogated by the *Blake* definition. He refers to several places in the transcript in which the psychiatrist or the prosecutor referred to the right-from-wrong testimony as misleading or irrelevant. And, we observe that any such objection would have been unfounded. The use of the right-from-wrong test has been upheld as a proper inquiry under the first prong of the *Blake* standard of "wrongfulness." *United States v. Fratus*, 530 F.2d 644, 648 (5th Cir. 1976). The psychiatrist also testified that Iverson was able to conform his actions to the requirements of the law, which satisfies the second prong of the *Blake* standard. On cross-examination defense counsel repeated the conform-actions questions and focused on the second prong of the *Blake* standard.

Appellant argues that it was error to give the complete insanity charge because on the second prong, "to conform his conduct to the requirements of the law," was at issue. The argument is specious. At no time did Iverson inform the District Court or the Government that wrongfulness was not an issue. The only time he mentioned this theory was at one point in the cross-examination of the psychiatrist. The fact that counsel did not object to the Government's direct examination of the psychiatrist concerning Iverson's capacity to appreciate the wrongfulness of the act indicates a waiver of any claim of error. The Government, obviously following the *Blake* standard, sought to prove both prongs of the sanity standard. Iverson argues that since the defense only put into issue the latter element, it is that element and that element alone that should be considered by the jury. As we have noted, the defense put on *no* independent evidence, nor was there ever any indication that only the second element was in issue. The Government's strategy of proving Iverson sane under both prongs of the sanity standard was proper.

Iverson's oblique reliance on *United States v. Fratus*, 530 F.2d 644 (5th Cir. 1976), is misplaced. Although this Court did discuss the disjunctive nature of the *Blake* standard, it did so with reference to the *defense* position at trial.

> . . . once it has been established that the defendant is indeed suffering from a mental disease or defect, the remainder of the test is a disjunctive one— the defense must then prove either that the disease rendered the defendant incapable of appreciating the wrongfulness of his conduct, or that it rendered him incapable of conforming his conduct to the requirements of the law. The defense may choose to put only one of these latter 'capacity' elements into issue, or it may elect to proceed on both of them, as was the case here.

*Id.* at 648.

■ At Iverson's trial the Government obviously conceded the mental illness of the defendant. The psychiatrist's testimony concerning the *Blake* criteria of "wrongfulness" or "conform to law" under *Fratus* may have been technically unnecessary since Iverson put on no evidence of either prong of the sanity standard. But the psychiatrist's testimony itself was sufficient to put both *Blake* prongs before the jury. And, the District Court's complete instruction was proper.

AFFIRMED.