**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**William Coy DAVIS,
Defendant-Appellant.**

**No. 78–5172.**

United States Court of Appeals,
Fifth Circuit.

April 12, 1979.

Theodore J. Sakowitz, Federal Public Defender, Robyn Hermann, Asst. Federal Public Defender, Miami, Fla., for defendant-appellant.

Jack V. Eskenazi, U. S. Atty., Kevin M. Moore, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before GEWIN, GEE and RUBIN, Circuit Judges.

GEWIN, Circuit Judge:

William Coy Davis challenges his conviction under an indictment for embezzlement of funds from a federally insured bank in violation of 18 U.S.C. § 656. Appellant raises three issues for review. He contends that there was a fatal variance between the offense charged in the indictment and the evidence adduced at trial, that the evidence was insufficient to support the verdict, and the evidence was insufficient to establish that he was legally sane at the time in question. We reject these contentions and affirm the conviction.

Appellant was employed as head teller of the First National Bank of Margate, Mar-

gate, Florida, for ten months and had sole custody of the coin and currency in the vault. Davis turned in his resignation on October 4, 1976, citing financial and legal problems with his ex-wife as the reasons for his actions. The Vice President of the bank immediately ordered an audit of the bank which revealed a shortage of $150.00 in currency. A further audit of the coins established an additional shortage in coins of $5,600.00.

On the following Saturday Davis met with his friend, Pastor Gary Record, and several bank officials. He admitted taking the money, and stated that he had begun taking it in March and concluded in September.

During the trial two psychiatrists gave conflicting testimony concerning Davis' mental condition at the time of the offense. Dr. Stillman, who was appellant's personal psychiatrist for a number of years, concluded that during the period in question, Davis was suffering from a mental disease of such degree that he lacked the capacity to conform his conduct to the requirements of the law. Dr. Jaslow, the government's medical expert, testified that although Davis suffered from a mental disease or defect, he was nevertheless legally sane at the time in question.

Davis was found guilty and subsequently received a one-year suspended sentence and was placed on probation for five years. The court further ordered appellant to make restitution in the sum of $5,750.00.

Appellant's first contention is that there was a fatal variance between the offense charged in the indictment and the evidence adduced at trial. The indictment charged in essence that on or about October 4, 1976, in the Southern District of Florida, Davis, while an employee of the bank, embezzled certain funds from the bank.[1]

---

1. The following is the full indictment:

    The Grand Jury charges:

    ### COUNT I

    On or about October 4, 1976, in Margate, in the Southern District of Florida, the defendant,

WILLIAM COY DAVIS,

being an employee, that is head teller, of the First National Bank of Margate, Margate, Florida, the deposits of which were insured by the Federal Deposit Insurance Corporation, Certificate Number 18811–5, knowingly and with intent to injure and defraud said

Appellant contends that a variance exists because the evidence established he was not at the bank on October 4, having previously resigned, but was in fact in Georgia that day. Also, Davis maintains that while the indictment alleged a single taking on a single date, the proof established multiple takings on several days.

■ It is well settled that the general rule that allegations and proof must correspond is based on the requirements "(1) that the accused shall be definitely informed as to the charges against him, so that he may be enabled to present his defense and not be taken by surprise by the evidence offered at the trial; and (2) that he may be protected against another prosecution for the same offense." *Berger v. United States*, 295 U.S. 78, 82, 55 S.Ct. 629, 70 L.Ed. 1315, 1318 (1935); *Bennett v. United States*, 227 U.S. 333, 33 S.Ct. 288, 57 L.Ed. 531 (1913).

■ This circuit has held that an indictment is generally sufficient if it sets forth the offense in the words of the statute including all the elements. *United States v. Slepicoff*, 524 F.2d 1244 (5th Cir.), *reh. denied*, 526 F.2d 1407, *cert. denied*, 425 U.S. 998 (1975), *citing Hamling v. United States*, 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974).

■ The indictment in the instant case, following the language in the statute, did fully inform appellant of the elements of the charge against him. Furthermore, since the indictment did not allege any spe-

cific acts constituting embezzlement, any alleged variance on that basis is without merit.

■ We, thus, conclude that no variance existed in the case at bar. Moreover, if a variance is assumed, arguendo, there has been no showing that the alleged variance affected any of the "substantial rights" of the accused. *United States v. Juarez*, 573 F.2d 267, 278–79 (5th Cir. 1978).

Appellant also challenges the court's denial of his motion for judgment of acquittal based on insufficiency of the evidence. The heart of his argument is that the government failed to prove a single taking in excess of $100.00.[2]

■ The appropriate test for reviewing the sufficiency of the evidence is whether, taking the view most favorable to the government, a reasonably minded jury could determine that the relevant evidence was adequate and sufficient to support the conclusion of defendant's guilt beyond a reasonable doubt. *United States v. Shaw*, 555 F.2d 1295, 1300 (5th Cir. 1977); *United States v. Reynolds*, 511 F.2d 603, 606 (5th Cir. 1975); *United States v. James*, 510 F.2d 546 (5th Cir.), *cert. denied*, 423 U.S. 855, 96 S.Ct. 105, 46 L.Ed.2d 81 (1975). *See Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1941).

We reject appellant's argument that the evidence presented was insufficient to support a conclusion that appellant did embezzle funds in excess of $100 from the bank[3]

---

bank, did embezzle, abstract, purloin, and willfully misapply money, funds, and credits belonging to and entrusted to the care and custody of said bank, to wit: the sum of $5,750.00; all in violation of Title 18, United States Code, Section 656.

**2.** Under 18 U.S.C. § 656 the amount embezzled must exceed $100 before the offense constitutes a felony.

**3.** 18 U.S.C. § 656

Whoever, being an officer, director, agent or employee of, or connected in any capacity with any Federal Reserve bank, member

bank, national bank or insured bank, or a receiver of a national bank, or any agent or employee of the receiver, or a Federal Reserve Agent, or an agent or employee of a Federal Reserve Agent or of the Board of Governors of the Federal Reserve System, embezzles, abstracts, purloins or willfully misapplies any of the moneys, funds or credits of such bank or any moneys, funds, assets or securities intrusted to the custody or care of such bank, or to the custody or care of any such agent, officer, director, employee or receiver, shall be fined not more than $5,000 or imprisoned not more than five years, or both;

on any one occasion. When appellant was confronted by bank officials with the existence of a shortage, he admitted that he had taken the money and had $400 left in his possession. Davis also told bank officials that he would attempt to make restitution of the $5,750, but was unable to do so. Under appellant's apparent *modus operandi*, coin bags were falsely tagged as having amounts and types of coins of larger denominations than that which the bags actually contained. Each of these sealed bags had a coin shortage in excess of $100.

Thus, viewing the evidence in its entirety, we are convinced that the evidence was sufficient to enable a reasonably minded jury to conclude that Davis did embezzle funds in excess of $100 from the bank[4] on one or more occasions.

The final issue raised by Davis is whether there was sufficient proof to establish that he was legally sane at the time he embezzled the funds from the bank. He argues that the testimony of the government psychiatrist, who saw Davis for only a 90 minute interview, was insufficient to rebut the testimony of his psychiatrist, who had treated him for six years and who was treating him throughout the time in question.

Once the issue of insanity has been raised, the government has the burden of proving beyond a reasonable doubt that appellant was sane at the time of the alleged crime. *United States v. Fratus*, 530 F.2d 644, 648 (5th Cir.), *cert. denied*, 429 U.S. 846, 97 S.Ct. 130, 50 L.Ed.2d 118 (1976); *Brock v. United States*, 387 F.2d 254, 257 (5th Cir. 1967).

This court has previously recognized that in determining if the evidence was sufficient to warrant submission of the issue of sanity to the jury, each case must be decided on its own facts, weighing the evidence presented on both sides. *Nagell v. United States*, 392 F.2d 934 (5th Cir. 1968).

The correct standard to be applied in determining the issue of insanity has been espoused by this court in *Blake v. United States*, 407 F.2d 908 (5th Cir. 1969) (en banc). Therein the court stated:

"(1) a person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law."

407 F.2d at 916.

As stated in *Fratus*, under the *Blake* test, once it has been established that a defendant is suffering from a mental disease or defect, it becomes essential for the defense to establish "either that the disease rendered the defendant incapable of appreciating the wrongfulness of his conduct, or that it rendered him incapable of conforming his conduct to the requirements of the law." 530 F.2d at 648.

In a case very much in point, we held that when the doctors agreed that the defendant was suffering from a mental defect, but there was conflicting evidence on the defendant's ability to either appreciate the wrongfulness of his actions or to conform his conduct to the law, the issue of his sanity was properly submitted to the jury. *United States v. Kohlmann*, 491 F.2d 1250 (5th Cir. 1974).

In the instant case both doctors did agree that Davis was suffering from a mental defect or disease, but reached antithetical conclusions on whether the problem was so severe that it rendered him insane. Thus, following *Kohlmann*, the conflict was sufficient to warrant submitting the issue to the jury.

After reaching the threshold decision that the issue of sanity was properly submitted

but if the amount embezzled, abstracted, purloined or misapplied does not exceed $100, he shall be fined not more than $1,000 or imprisoned not more than one year, or both.

4. While the evidence presented at trial might be viewed as strongly suggesting a common plan or scheme by Davis to embezzle in excess

of $100.00, we do not reach that issue since there was ample evidence from which the jury could have reasonably concluded a taking in excess of $100.00 occurred. Moreover, jury instructions regarding a common scheme or plan were neither requested nor given in the instant case.

to the jury, the remaining question is whether the evidence submitted was sufficient for a reasonably-minded jury to determine beyond a reasonable doubt that Davis was legally sane.

At first blush, the wide discrepancy in the amount of time spent with appellant by the psychiatrists cast some doubt on the reasonableness of the jury's determination that Davis was sane at the time of the embezzlement. However, a more careful scrutiny of the record reveals additional factors from which the jury might have reasonably concluded that appellant was legally sane at the time in question.

On cross-examination, Dr. Stillman, appellant's personal psychiatrist, testified that the examination upon which he had formed the basis of his expert opinion was conducted approximately 10 months after the offense and lasted only about 90 minutes. Moreover, he conceded that in reaching his conclusion, he relied primarily on appellant's own statements and his knowledge of appellant's prior mental problems.

Dr. Jaslow, the government's expert witness, also examined Davis for one and one-half hours and concluded that appellant's mental disorder did not render him substantially incapable of appreciating the wrongfulness of his conduct nor incapable of conforming his conduct to the requirements of the law. In reaching his determination, Dr. Jaslow considered factors of continued employment, assumption of responsibilities, and an offense requiring preparation as suggestive of a disturbance which is in remission or cured. Moreover, the doctor testified that if a diagnosis of manic-depressive would only become apparent after a long and continued association with appellant, the disorder was not of major importance.

Dr. Jaslow concluded that Davis committed the offense, not because of any mental defect or disorder, but because of the legal and domestic problems appellant had referred to in his letter of resignation.

Adding weight to Dr. Jaslow's expert opinion was the testimony of a bank employee, Roger Bruce, concerning appellant's behavior at the time of the embezzlement. He testified that in observing appellant on a daily basis at work that Davis did not demonstrate any outward manifestations of serious physical or mental problems, but only appeared to be nervous about his marital problems. Bruce also observed that appellant's problems had not interfered with his work performance.

After considering all the evidence presented by both expert and lay witnesses we are convinced that the jury could have reasonably concluded that Davis was legally sane at the time he embezzled the funds from the bank.

We find no merit in the issues raised by appellant and affirm his conviction.

AFFIRMED.