946 F.2d 887
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Petitioner-Appellee,
v.
Larry Eugene HUGHES, Respondent-Appellant.
 No. 91-6533.
 United States Court of Appeals, Fourth Circuit.
 Submitted Aug. 7, 1991.
Decided Oct. 15, 1991.
 
 Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. W. Earl Britt, District Judge. (CA-90-643-HC-BR)
 William E. Martin, Federal Public Defender, Jeffrey L. Starkweather, Assistant Federal Public Defender, Raleigh, N.C., for appellant.
 Margaret Person Currin, United States Attorney, Eileen G. Coffey, Assistant United States Attorney, Raleigh, N.C., for appellee.
 E.D.N.C.
 AFFIRMED.
 Before WIDENER and SPROUSE, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Larry Eugene Hughes appeals the district court's order committing him to the care and custody of the attorney general pursuant to 18 U.S.C. § 4246. Finding no error, we affirm.
 
 
 2
 Hughes voluntarily presented himself to the psychiatric ward of a hospital in Louisville, Kentucky; while at the hospital he threatened the life of President Bush. He described a plan for carrying out this threat, which included prostituting himself to obtain money, purchasing a handgun, and traveling to Washington, D.C., to shoot the president. Hughes was admitted to the Federal Correctional Center at Butner for evaluation on the order of a Kentucky district court.
 
 
 3
 While at FCI-Butner, Hughes was evaluated by several psychiatrists and psychologists, including Dr. Gregory Caesar and clinical psychologist Kevin McBride. The Butner psychiatric staff certified that Hughes suffered from a mental disease and was dangerous pursuant to 18 U.S.C. § 4241(d). Upon the recommendation of the Butner staff, the district court held a competency hearing. The government's witness, Dr. Caesar, testified that Hughes was schizophrenic and delusional,* and that Hughes would present a substantial risk of bodily injury to another or harm to the property of another if released. He supported this conclusion with testimony regarding Hughes' criminal and psychiatric background, along with Hughes' unwillingness to follow the psychiatric treatment prescribed by his doctors.
 
 
 4
 Hughes testified on his own behalf. He was aware of the nature of the proceedings, though he denied threatening the president and denied being mentally ill. He stated that he thought the drugs prescribed by his doctors were poison, and that the only medication he was willing to take was vitamins and iron.
 
 
 5
 Hughes also called Dr. Billy Royal. Dr. Royal conceded that Hughes was mentally ill, and agreed with the Butner staff's diagnosis of schizophrenia. He said that Hughes should live in some sort of structured environment, both for his own protection and for the safety of others. When asked if Hughes would present a substantial risk of harm to others if released, Dr. Royal testified that "his danger to anyone else would be accidental or incidental to his mental illness rather than any specific directed attempt or plan."
 
 
 6
 The court found that Hughes suffered from a mental disease and would pose a substantial risk of harm to others if released. Consequently, the court ordered Hughes committed pursuant to 18 U.S.C. § 4246. Hughes appealed.
 
 
 7
 A person may be committed to the care and custody of the attorney general if the court determines by clear and convincing evidence that he suffers from a mental disease or defect, and that his release would pose a serious threat of harm to others or to the property of others. 18 U.S.C. § 4246. The district court's determination regarding competence may be reversed only if it is clearly erroneous. Fed.R.Civ.P. 52; United States v. Fratus, 530 F.2d 644 (5th Cir.), cert. denied, 429 U.S. 846 (1976); see also Hall v. United States, 410 F.2d 653, 658 (4th Cir.) (finding of incompetence not to be set aside unless it is clearly arbitrary or unwarranted), cert. denied, 396 U.S. 970 (1969). A finding is clearly erroneous only if the reviewing court is left with a "definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948). On appeal, the evidence must be viewed in the light most favorable to the appellee. Ente Nazionale Per L'Energia Electtrica v. Baliwag Navigation, Inc., 774 F.2d 648, 654 (4th Cir.1985).
 
 
 8
 In this case, Hughes concedes that he suffers from a mental disease or defect. Therefore, the only issue on appeal is whether the district court's finding that Hughes' release would pose a substantial risk of harm to others is clearly erroneous. The evidence in support of the district court's finding included Hughes' past record of criminal behavior and mental illness, Dr. Caesar's testimony regarding Hughes' future dangerousness, and Hughes' own testimony that the only medication he was willing to take was vitamins and iron. Dr. Royal's testimony was less conclusive; he stated that Hughes did not have an organized delusional system which would enable him to carry out a plan, but admitted that Hughes could pose a risk of harm to others as a result of his mental illness. However, the evidence as a whole supports the finding that Hughes' release would pose a risk of harm to others, particularly when it is considered in the light most favorable to the government. Therefore, we hold that the district court's order committing Hughes was not clearly erroneous.
 
 
 9
 We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not significantly aid the decisional process.
 
 
 10
 AFFIRMED.
 
 
 
 *
 Hughes' delusions included a belief that his I.Q. was 354, when it was actually in the 70-80 range; a belief that he would be president, coupled with his characterization of himself as the next John F. Kennedy; a claim that he had written many popular songs but had not received proper credit for them; and a belief that he was being brainwashed to turn him into a homosexual. He also believed that doctors were trying to put a voodoo curse on him, and that voices from outer space were telling him to commit forgeries and rob banks